**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**DANA LEIGH**                                                                                **PLAINTIFF**

**V.**                       **CASE NO.: 1:12CV00126 BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration**[1]                                        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dana Leigh appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.**        **Background**

On May 28, 2010, Ms. Leigh filed for SSI, alleging disability beginning on January 1, 1995, due to a neurological disorder.[2] (Tr. 125-128, 136, 146) Ms. Leigh's claims were denied initially and upon reconsideration. At her request, an Administrative Law Judge ("ALJ") held a hearing on June 22, 2011, at which Ms. Leigh appeared with her attorney. (Tr. 41) At the hearing, the ALJ heard testimony from Ms. Leigh and a vocational expert ("VE"). (Tr. 41-64)

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. She has been substituted for named Defendant Michael J. Astrue under Fed.R.Civ.P. 25.

[2] At the administrative hearing, Ms. Leigh amended her alleged disability onset date to May 28, 2010. (Tr. 46)

The ALJ issued an amended decision on September 7, 2011, finding that Ms. Leigh was not disabled under the Act. (Tr. 13-23) On October 9, 2012, the Appeals Council denied Ms. Leigh's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-5)

Ms. Leigh was 44 years old at the time of the hearing. (Tr. 46) She had graduated from high school and had completed some college courses. (Tr. 46) Ms. Leigh fished in her free time. (Tr. 50) Her daily activities included doing laundry, vacuuming, taking care of cats, cleaning windows, picking up around the house, cooking full meals about three times a week, weeding flowers, and feeding birds. (Tr. 53-56)

## II. Decision of the Administrative Law Judge[3]

The ALJ found that Ms. Leigh had not engaged in substantial gainful activity since her alleged amended disability onset date. (Tr. 15) And he found that Ms. Leigh had the following severe impairments: cervicalgia, right brachial neuritis, history of Meniere's disease associated with vertigo, dizziness, and migraine headaches, and fibromyalgia. (Tr. 15-17) The ALJ also found, however, that Ms. Leigh did not have an impairment or

---

[3] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g) (2005).

combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.926). (Tr. 17-19)

The ALJ determined that Ms. Leigh had the residual functional capacity ("RFC") to perform light work, with a sit or stand at will option, with only occasional reaching and grasping with her non-dominant left upper extremity, no exposure to hazards such as unprotected heights, open flames, or dangerous moving machinery, and where she was limited to tasks requiring one or two steps that are learned and performed by rote with little judgment required and simple, direct, and concrete supervision. (Tr. 20-22)

Although Ms. Leigh had worked, she had never worked at the level of substantial gainful activity, so she had no past relevant work. (Tr. 22, 58, 132-133) After considering VE testimony, the ALJ determined that Ms. Leigh could perform significant jobs existing in the national economy. (Tr. 22-23, 58-62) Accordingly, the ALJ found that Ms. Leigh was not disabled. (Tr. 23)

### III. Analysis

The standard of review in this appeal is whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's

decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

    A.    *Plaintiff's Arguments for Reversal*

Ms. Leigh claims the ALJ's decision was not supported by substantial evidence because: (1) the ALJ rejected the opinions of her treating physicians; (2) the ALJ did not adequately consider her subjective allegations; and (3) the ALJ failed to fully and fairly develop the record. (#11)

    B.    *Treating Physician's Opinion*

An ALJ is generally obliged to give controlling weight to a treating physician's medical opinions when the opinions are supported by the record. See *Ellis v. Barnhart*, 392 F.3d 988, 994-995 (8th Cir. 2005) (citing *Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir. 2004); 20 C.F.R. § 416.927(d)(2)). An ALJ may discount or even disregard the opinions of a treating physician, however, when they are inconsistent or where other medical assessments are better supported. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).

In this case, Ms. Leigh argues the ALJ erred in rejecting the opinions found in RFC questionnaires completed by her neurologist, David Silas, M.D., and her primary care physician, Ryan Buffalo, M.D. (#11, pp. 17-22) Her point is not well taken. The ALJ properly rejected the RFC questionnaires as inconsistent with the overall objective

medical evidence. (Tr. 22) The questionnaires are inconsistent with the physicians' own treating records, directly contradictory to each other and, in part, supportive of the ALJ's findings. (Tr. 228-232, 305-309)

For example, Dr. Buffalo noted at every visit that Ms. Leigh had full range of motion in her neck (Tr. 199, 219, 238), but checked on the RFC questionnaire that she could never look up or down. (Tr. 308) Dr. Silas stated that Ms. Leigh would need a cane or assistive device to occasionally stand or walk. (Tr. 231) He noted repeatedly, however, that she had 5/5 strength, was ambulatory without any problem, and had good strength and coordination. (Tr. 294, 299, 300) Two of the findings Dr. Silas noted to support his opinions were that Ms. Leigh dragged her left leg and had poor coordination. (Tr. 228) At Ms. Leigh's last visit, however, Dr. Silas found good coordination and no abnormal movements.[4] (Tr. 294) In another visit, he noted that Ms. Leigh had a normal gait. (Tr. 299)

The two RFC questionnaires also conflict with each other. Dr. Buffalo stated that Ms. Leigh's prognosis was good, while Dr. Silas stated that Ms. Leigh's prognosis was "fair not good." (Tr. 228, 305) Dr. Buffalo stated that Ms. Leigh would not need a cane or other assistive device. (Tr. 308) Dr. Silas stated that Ms. Leigh would need a cane or other assistive device. (Tr. 231) Dr. Buffalo found that Ms. Leigh could never look up or

---

[4] Dr. Silas noted abnormal findings in one of the four visits with Ms. Leigh. (Tr. 296) This notation conflicts with his findings in her other three visits, including the last one. (Tr. 294, 299, 300)

down (Tr. 308), while Dr. Silas found that she could occasionally look up or down. (Tr. 231) Dr. Buffalo stated that Ms. Leigh's symptoms were only severe enough to interfere with attention and concentration one to five percent of an eight-hour workday (Tr. 306), while Dr. Silas found that her symptoms were severe enough to interfere with attention and concentration for thirty-four to sixty-six percent of an eight-hour workday. (Tr. 229) Dr. Buffalo and Dr. Silas also found vastly different limitations in Ms. Leigh's sitting, standing, walking, lifting, and carrying. (Tr. 230-231, 307-308) Dr. Silas found that Ms. Leigh's limitations began in 1985, even though he did not begin seeing her until 2010. (Tr. 228, 232)

Even if the ALJ had not rejected the opinions in the RFC questionnaires, some of the findings support the ALJ's decision. Dr. Silas found that Ms. Leigh could sit at least six hours in an eight-hour day and stand or walk about four hours in an eight-hour day. (Tr. 230) The ALJ's RFC finding for light work with a sit-or-stand-at-will option is consistent with Dr. Silas's finding. Dr. Silas found that Ms. Leigh could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. (Tr. 231) This finding is also consistent with the ability to perform light work.

Dr. Buffalo noted that Ms. Leigh's only symptoms were pain and fatigue, and the symptoms were only severe enough to interfere with attention and concentration one to five percent of an eight-hour workday. (Tr. 305-306) This is consistent with the ALJ's decision to limit Ms. Leigh to one- or two-step tasks that are learned and performed by

rote with little judgment required. (Tr. 20) Dr. Buffalo cited MRIs in support of his findings. (Tr. 305) He previously noted that the MRIs were "basically unrevealing." (Tr. 199) One MRI showed no acute process in the brain. (Tr. 203) The other showed a congenital cervical fusion, a small disc protrusion with mild acquired canal stenosis, no significant neural foramen narrowing, and no abnormal cord signal. (Tr. 204-205) These findings support Dr. Buffalo's opinion that Ms. Leigh's pain would rarely interfere with the performance of simple work tasks. (Tr. 306) This finding strongly supports the ALJ's RFC determination. After reviewing the entire record, it is clear the ALJ did not err when considering the RFC questionnaires.

    C.    *Credibility*

Ms. Leigh argues that the ALJ erred in his credibility determination and, thus, failed to properly consider her subjective complaints. (#11, pp. 22-26) An ALJ must consider all symptoms, including pain, and the extent to which those symptoms are consistent with the objective medical evidence. 20 C.F.R. § 416.929. But once made, the ALJ's conclusions can be upheld if the record as a whole supports them. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

The ALJ noted that he had considered Ms. Leigh's subjective complaints under the requirements of *Polaski v. Heckler*, 739 F.2d 943 (8th Cir. 1984). (Tr. 21) The ALJ discussed Ms. Leigh's daily activities, including singing at special events, fishing, doing laundry, cleaning, preparing meals, caring for pets, and attending church. (Tr. 21) The

ALJ noted Ms. Leigh's subjective complaints and the lack of objective medical support for the more extreme allegations (Tr. 17-20) and discussed the improvement of her symptoms when medicated. (Tr. 18-19, 21) The ALJ also noted that Ms. Leigh had no past relevant work, meaning she had not performed substantial gainful activity in the past fifteen years. (Tr. 22) The ALJ specifically noted Ms. Leigh's pain when determining her RFC (Tr. 21) and restricted her RFC after considering her subjective allegations. (Tr. 19)

The ALJ considered the factors necessary to make his credibility determination. See *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 968 (8th Cir. 2003) (objective medical evidence, prior work history, daily activities, duration, frequency, and intensity of pain, precipitating or aggravating factors, dosage, effectiveness, and side effects of medication, and functional restrictions are all factors to consider when assessing the credibility of a claimant's subjective allegations). Accordingly, the ALJ did not err in evaluating the credibility of Ms. Leigh's subjective allegations.

D.    *Development of the Record*

Ms. Leigh argues that the ALJ erred by failing to order a consultative mental examination regarding her alleged depression and anxiety. (#11, pp. 26-27) An ALJ has a duty to develop the record fairly and fully, independent of the claimant's burden to press his or her case. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (citation omitted). The duty to develop additional evidence, however, arises only when medical source

evidence is inadequate to determine disability. *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006).

A fully and fairly developed record must contain enough evidence to determine the effect of a claimant's impairment on his ability to work. *Byres v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). Reversal due to failure to develop the record is warranted, however, only where the failure is unfair or prejudicial. *Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001).

In this case, the record contains little evidence regarding Ms. Leigh's alleged anxiety and depression. Dr. Silas first mentioned anxiety on January 25, 2011, when he stated that people completing a cardiac work up said Ms. Leigh had a problem with anxiety disorder. (Tr. 296) Ms. Leigh apparently confirmed this disorder by "admit[ting] that she does have stress and tension and has not had this in the past." (Tr. 296) At her next and final visit, Ms. Leigh told Dr. Silas that she was still depressed, but not as much as she had been in the past. (Tr. 294) Dr. Silas checked boxes for depression and anxiety on his RFC questionnaire (Tr. 229), but did not describe any psychological limitations that would impact Ms. Leigh's ability to work. (Tr. 232)

It does not appear that Ms. Leigh's primary care physician, Dr. Buffalo, ever diagnosed Ms. Leigh with anxiety or depression. (Tr. 199-207, 219-220, 238-239) In fact, Dr. Buffalo did not find that Ms. Leigh suffered from any psychological conditions or symptoms. (Tr. 305-306)

Also, it does not appear that Ms. Leigh or her attorney ever requested a consultative mental examination. In fact, it is unclear that she ever raised mental limitations as an issue in this case.

In her disability filings, Ms. Leigh did not allege that anxiety or depression limited her ability to work. (Tr. 136) She indicated could shop in stores, spend time with others, talk on the telephone, meet people to visit, attend church, and spend time with family. (Tr. 156-157) She had no problems getting along with people. (Tr. 158-159)

Ms. Leigh testified that she was nervous and afraid because of her "confusion." (Tr. 49) She stated that she was not taking any medications for mental issues. (Tr. 49) At the hearing, Ms. Leigh's attorney did not raise an issue or ask her any questions about mental impairments. (Tr. 41-64)

Regardless of whether Ms. Leigh raised the issue of mental limitations, the ALJ considered both depression and anxiety in his decision. The ALJ correctly noted only mild limitations in Ms. Leigh's activities of daily living, social functioning, and concentration, and no episodes of decompensation. (Tr. 16-17)

The record does not evidence a single attempt by Ms. Leigh to seek treatment from a mental health specialist. Ms. Leigh also has not alleged any further limitations in her RFC due to mental impairments. In any event, she has failed to show any prejudice from the lack of a consultative mental examination. More importantly, the evidence in the record is sufficient to support the ALJ's decision.

## IV.     Conclusion

The Court has reviewed all of the evidence in the record.  Despite her impairments, there is sufficient evidence in the record as a whole to support the Commissioner's determination that Dana Leigh retained the residual functional capacity to perform jobs existing in significant numbers in the economy.

Accordingly, her appeal is DENIED, and the Clerk of Court is directed to close the case, this 8th day of January, 2014.

_____
UNITED STATES MAGISTRATE JUDGE